UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

ROBERT McCULLOUGH,

                            Petitioner,          **DECISION AND ORDER**
        -vs-                                      No. 03-CV-0085(VEB)

FLOYD BENNETT, JR.,

                            Respondent.
_____

## I.      Introduction

Petitioner, Robert McCullough ("McCullough"), filed a *pro se* petition for a writ of

habeas corpus pursuant to 28 U.S.C. § 2254 seeking review of his conviction in New York State

Supreme Court (Monroe County) on charges of burglary, assault and criminal possession of a

weapon. The conviction here at issue stems from his unlawful entry into the home of Carmen

Jones ("Jones") and her daughter, Ebony Holloman ("Holloman"). McCullough struck Jones in

the left side of her head with a pistol, demanded to know the whereabouts of a person named

"Chill," and then departed the house.

McCullough filed an amended petition on March 11, 2003 (Docket #3), in which he

alleged (1) prosecutorial misconduct in connection with the execution of a material witness

order; (2) ineffective assistance of trial counsel based on the failure to call certain witnesses, the

failure to object to the prosecutor's failure to provide notice of a statement to police by petitioner

pursuant to New York Criminal Procedure Law ("C.P.L.") § 710.30,[1] and the failure to

_____

[1] C.P.L. § 710.30 provides that "[w]henever the people intend to offer at a trial . . . evidence of a statement
made by a defendant to a public servant, which statement if involuntarily made would render the evidence thereof
suppressible upon motion . . . they must serve upon the defendant a notice of such intention, specifying the evidence
intended to be offered." N.Y. Crim. Proc. Law § 710.30(1).

participate in a "*Hellenbrandt*" [*sic*] hearing; and (3) ineffective assistance of appellate counsel based on the failure to argue trial counsel's ineffectiveness on appeal. The parties have consented to disposition of this matter by the undersigned pursuant to 28 U.S.C. § 636(c).

## II.     First Motion for a Stay

On May 6, 2005, McCullough filed a motion to stay his amended petition so that he could return to state court and file a C.P.L. § 440.10 motion to vacate the judgment raising the following claims: (1) ineffective assistance of trial counsel based on the failure to protect his Fifth Amendment right against self-incrimination; and (2) ineffective assistance of trial counsel based on the failure to object to his spontaneous statement to the victim ("You better talk to Chill!") uttered during the show-up identification procedure. *See* Docket #19. The first ineffective assistance claim alleging the failure to protect McCullough's Fifth Amendment rights apparently relates to the same spontaneous statement made during the show-up. The district court (Scott, M.J.) denied McCullough's motion for a stay without prejudice to renew upon a showing, pursuant to *Rhines v. Weber*, 544 U.S. 269, 125 S. Ct. 1528, 1534 (2005), that good cause exists for his failure to exhaust the new claims; that his claims "relate back" to the originally pled claims; and his new claims are not "plainly lacking in merit."

## III.    Petitioner's Renewed Motion for a Stay

McCullough has now filed a "Renewed Motion for a [*sic*] Order Granting a Stay." *See* Docket ## 22, 23. He states that he "seeks to renew his previous motion to stay these proceedings to exhaust a heretofore inadequately argued claim of his Fifth Amendment right against self incrimination," which is "further codified in New York statutory law, specifically

Criminal Procedure Law 710.30." *See* Docket #23. Later in the renewed motion, in his discussion of the "relation back" requirement, McCullough explains that he "has asserted since he began his foray through the state court that his right against self incrimination (CPL.710.30) had been waived as a direct result of ineffective assistance of trial counsel by failing to object when the CPL 710.30 violation occurred." *Id.*

As an initial matter, the Court observes that McCullough has already exhausted his ineffective assistance of counsel claim premised on the failure to object to the lack of notice pursuant to C.P.L. § 710.30 by raising it in his collateral motion to vacate the judgment pursuant to C.P.L. § 440.10. *See* Respondent's Appendix of Exhibits ("Resp't App.") (Docket #7). Thus, there is no need for a stay with respect to his claim that trial counsel was deficient in failing to object to the admission of McCullough's statement based on the prosecutor's failure to provide notice under C.P.L. § 710.30.

With respect to his stand-alone claim that his Fifth Amendment rights allegedly were violated because his statement to the police was introduced at trial despite the failure of the prosecution to give the notice required under C.P.L. § 710.30, the Court finds that, for several reasons, McCullough cannot meet the *Rhines* criteria and a stay is not warranted. First, the claim is procedurally defaulted because McCullough faces an absence of corrective process were he to return to state court and attempt to raise it. The only vehicle for raising this claim is by means of a collateral motion to vacate the judgment under C.P.L. § 440.10. Because the factual foundation for this claim was apparent on the trial record,[2] and therefore could have been raised on direct

---

[2] Defense counsel first was apprised of the statement in question at the pre-trial suppression hearing concerning the victims' identifications of McCullough when the police officers gave testimony concerning the show-up identification procedure. Apparently, the officers neglected to include McCullough's statement in their reports; the prosecutor claimed that he did not know of the statement until the officers' testimony came in at the hearing.

appeal, the court deciding the C.P.L. § 440.10 would be required to deny the claim pursuant to C.P.L. § 440.10(2)(c). Thus, the claim, although technically unexhausted, must nevertheless be "deemed exhausted" because it would be subject to a procedural default were McCullough to attempt to return to state court. *See Grey v. Hoke*, 933 F.2d 117, 120-21 (2d Cir. 1991) ("For exhaustion purposes, 'a federal habeas court need not require that a federal claim be presented to a state court if it is clear that the state court would hold the claim procedurally barred.'") (quoting *Harris v. Reed*, 489 U.S. 255, 263 n. 9 (1989)). The Court agrees with respondent that McCullough's forfeiture in state court of his C.P.L. § 710.30 claim by failing to raise it on direct appeal bars him from litigating the merits of the claim in this federal habeas proceedings absent a showing of cause for the procedural default and prejudice resulting therefrom. *Id.* (citing *Murray v. Carrier*, 477 U.S. 478, 492 (1986)). On the circumstances presented here, McCullough can demonstrate neither cause nor prejudice to excuse the default.

Second, even if the Court were not to dismiss the claim as procedurally defaulted, it would dismiss it as not cognizable in a federal habeas proceeding. Federal habeas relief is only available if a petitioner's custody violates the Constitution, laws, or treaties of the United States. *See* 28 U.S.C. § 2254(a). Federal courts do not have the power to correct a misapplication of state law unless that misapplication itself violates federal law. *See Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991); *Ponnapula v. Spitzer*, 297 F.3d 172, 182 (2d Cir. 2002). Courts in this Circuit consistently have held that a claim pursuant to C.P.L. § 710.30 does not present a federal question cognizable on habeas review. *E.g.*, *Ventura v. Artuz*, 2000 WL 995497, No. 99-Civ-12025 (S.D.N.Y. July 19, 2000) (violation of C.P.L § 710.30 is "clearly a state law issue and is not cognizable under federal habeas review"); *Smith v. Artus*, 2005 WL 1661104, at *7, No. 03-

Civ-9819 (S.D.N.Y. July 14, 2005) (same). Therefore, even if McCullough's claim relating to alleged violations of C.P.L. § 710.30's notice provision were not procedurally defaulted, it still would not be cognizable in this federal habeas corpus proceeding.

Because staying the amended petition to permit exhaustion of procedurally defaulted and not-cognizable claim would be pointless, the Court denies, with prejudice, McCullough's motion for a stay.[3]

## IV.    Factual Background and Procedural History

On the day they were scheduled to testify at trial, Jones and Holloman (the two eyewitnesses/victims) failed to appear in court. The prosecutor informed the trial court that he had met with both of the witnesses in his office several days ago and that they had indicated they would be present for trial; that members of the district attorney's office had talked to them the previous day and they again affirmed that they would be present; and that the witnesses had never suggested that they were going to be anything but cooperative. T.269-72.[4] The trial court then issued material witness orders to compel their appearance.

Presented with the choice of being arrested pursuant to a material witness order or appearing voluntarily, Jones accompanied an investigator from the district attorney's office to the prosecutor's office about one hour before her testimony resumed. T.456-57. Jones, however, refused to divulge her daughter's place of employment to the investigator.  The prosecutor

---

[3] McCullough's C.P.L. § 710.30 claim in fact is discussed later in this opinion in the Court's analysis of the ineffective assistance of counsel claim relating to the failure to object to the lack of C.P.L. § 710.30 notice. As explained more fully below, McCullough received all of the process due to him under the statute (notwithstanding the lack of formal notice concerning the statement) and therefore he was not prejudiced by counsel's failure to object. Thus, for practical purposes, McCullough has received substantive habeas review of his C.P.L. § 710.30 claim.

[4] Citations to "T.___" refer to the trial transcript.

informed the trial court that Jones's reluctance to testify was occasioned by threats that she and her daughter had received. T.276-77, 460-62, 479-80.[5]

Jones testified that at about 11:30 p.m. on January 20, 1997, she and her daughter were in their house at 460 Bernard Street. Jones was asleep in her bedroom when she was awakened by a loud noise. T.281-82. As she moved toward her bedroom door, she encountered a black male standing directly in front of her. T.285. (Jones testified that she had seen this man on "maybe" two occasions prior to that night although she claimed not to recall where she had seen him.) Jones identified this individual as McCullough prior to trial at a show-up identification conducted shortly after the incident, and also identified him at trial. T.289-90, 328. According to Jones, McCullough asked, "Where's Chill?"[6] and then struck her on the head with a hard object. T.297-99. Jones retreated to her bedroom to get her handgun as McCullough walked toward the kitchen. Now armed, Jones went into the kitchen where she saw McCullough, still holding his gun, standing over her daughter, who was lying naked on the floor, screaming and crying. T.300-02. McCullough then headed to the front door and announced, "Tell Chill I'm going to kill that motherfucker." T.304.

Jones followed McCullough to the door and saw him get into the driver's seat of a light grey and black Cadillac parked in her driveway. T.304. As McCullough drove away, she

---

[5] Defense counsel noted on the record that he had discussed these alleged threats with his client and his family; McCullough maintained that neither he nor anyone he knew had threatened the witnesses. T.277. At that time, defense counsel declined the trial court's offer of a hearing concerning the allegations of threats made against Holloman. T.278.

[6] Jones admitted that she had a social acquaintance whom she knew as "Chill," although she testified that she did not know the person's real name or address. However, one of defense counsel's questions to Jones on cross-examination when she testified initially for the prosecution implied that "Chill" was actually her daughter's boyfriend.

observed another black male in the vehicle. T.308-09. Jones then called the police and provided

them with a partial license plate number of the Cadillac. T.339. Shortly thereafter, the police

apprehended McCullough driving the Cadillac. A pregnant black female named Barbara Brown

("Brown") was in the front seat of the car, and she was found to be carrying a handgun; a black

male named Gerald Jackson ("Jackson") was seated in the backseat. During a show-up

identification which was conducted shortly after midnight in front of her home, Jones identified

McCullough as the intruder. During the show-up, McCullough spontaneously yelled out, "You

better talk to Chill!" and "Tell Chill I'm going to get him!" T.354, 427.[7]

On the day following Jones's testimony, defense counsel placed on the record the fact

that Jones had appeared, unsolicited, at his office that morning. According to defense counsel,

Jones said that "she had no intentions of coming to court at any time, refused to come to court,

that she was threatened with an arrest if she did not come to court and testify." T.454. In

addition, Jones told defense counsel that she "was unable to make identification of the person

inside of her house" on the night of the incident. T.455. She said that when she was asked to

make her identification in court, "she just simply stood up and pointed to the right side of the

room, which she was informed prior to [*sic*] and in her own mind thought that the defendant

would be in that area of the courtroom." *Id.* Based on these allegations, defense counsel

requested a hearing to determine whether or not there were any threats made to Jones.

The prosecutor responded, saying that his investigator, James Rossiter ("Rossiter"), had

gone to Jones's place of employment to execute the material witness order and Jones had "made

---

[7] Officer Raymond Benitez testified that he inadvertently failed to document this utterance by McCullough in his report; he stated that he did not recall it until he was discussing his trial testimony with the prosecutor some ten months after the incident. T.397

a scene." T.457. Rossiter informed Jones that she had two choices–to come voluntarily or to be handcuffed and taken forcibly. *Id.* According to Rossiter, Jones agreed to come voluntarily to the prosecutor's office although she was "quite upset." T.460. Jones informed the prosecutor that her daughter "had been receiving threats by telephone from unknown persons that she should not come to court, that if she came to court severe harm would come to her." T.461. The prosecutor explained to Jones that the trial judge had the power to hold her in contempt of court if she did not appear in court to testify truthfully. Jones then suggested to the prosecutor that she would testify truthfully in court if he promised not to have someone go out and arrest her daughter. T.462. The prosecutor responded that he had no problem with that, as long as she agreed to "testify truthfully." *Id.* He denied suggesting to her what she should say or how she should say it. *Id.*

The trial court decided to conduct an *Isaacson*[8] hearing concerning the allegations that Jones was coerced to testify; arrangements were made to have an attorney present to represent Jones. T.464. On direct examination by defense counsel, Jones recanted her identification testimony and said that she could not remember what the intruder looked like. T.468. She stated that the investigator told her that if she did not testify at court, she would go to jail. T.470. However, Jones denied that the prosecutor ever threatened or forced her to do anything. T.470. On cross-examination, Jones admitted that the investigator had been courteous to her and had given her a choice of coming to court voluntarily or in handcuffs. T.473. Jones also admitted that she had testified truthfully before the grand jury and had been truthful when she gave her written statement to the police. T.477-78. Jones repeatedly denied that she was afraid of McCullough.

---

[8] *People v. Isaacson*, 44 N.Y.2d 511, 378 N.E.2d 78, 406 N.Y.S.2d 714 (1978).

T.481.

Rossiter, the investigator, testified that Jones had told him that she was "scared to death" about there "being repercussions . . . if she testified." T.491. According to the investigator, Jones said that she was "afraid to identify" McCullough; she never stated that she could not identify him. T.498.

At the close of the hearing, the trial court determined that there was "no prosecutorial misconduct on the part of either the assistant district attorney or the investigator" and denied defense counsel's application to strike Jones's testimony. T.508. When trial resumed, defense counsel called Jones as a defense witness. She testified essentially as she had at the *Isaacson* hearing, explaining that she had gone to defense counsel's office after testifying the first time because she was "just not sure" if McCullough was the perpetrator. T.522. She claimed that during the show-up identification, she was not able to tell if either of the persons she was shown had been in her house earlier that night. T.523. She denied that she was afraid of McCullough. T.524.

On cross-examination, Jones admitted that during the incident, the lights were on in the kitchen and the porch light was shining in through the open door, so she could see the intruder's face. T.530-31. Jones re-affirmed all of her previous testimony except that she claimed she did not recall that the gun displayed had black handles (as did the gun seized from McCullough's companion and introduced into evidence), T.534, and claimed that she was "just not sure" if she had identified the right person. T.536. She then admitted that during the show-up identification, she *was* sure that McCullough was the person who had entered her house. T.537. Jones also testified that the prosecutor told her that he could not say whether or not McCullough would be

present in the courtroom during her testimony. T.546. Jones also admitted that both Holloman and her five-year-old son were very upset and frightened and did not want her to testify; Jones maintained, however, that that was not why she refused to come to court. T.551.

The trial court, with the prosecutor's consent, dismissed the counts of the indictment relating to Jones's daughter, Holloman due to Holloman's failure to testify. T.556. The jury returned a verdict convicting McCullough of all of the remaining counts in the indictment.

Prior to sentencing, McCullough, through counsel, submitted a motion to vacate the judgment pursuant to C.P.L. § 330.30 based on affidavits from Jones and her daughter, Holloman, which McCullough argued constituted new evidence of his innocence. *See* M.2.[9] Holloman stated in her affidavit that she knew McCullough and that he was not in her house on the night of the intrusion; Holloman also averred that she had not been threatened in any way. M.2-3. The prosecutor noted that Holloman's affidavit contradicted her post-incident statement to the police and her grand jury testimony. M.7. The trial court denied McCullough's C.P.L. § 330.30 motion and set the matter for sentencing.

The Appellate Division, Fourth Department, of New York State Supreme Court affirmed the judgment of the trial court. *People v. McCullough*, 275 A.D.2d 1018, 713 N.Y.S.2d 600 (App. Div. 4th Dept. 2000). That court held that the affidavits submitted by Jones and Holloman did not constitute "newly discovered evidence" within the meaning of C.P.L. § 330.30(3). *Id.* ("In order to be considered newly discovered and to justify interference with the verdict, the evidence must be material, noncumulative, and not merely impeaching or contradictory of other evidence[.]") (citations omitted). Not only did McCullough fail to prove that the evidence could

---

[9] Citations to "M.__" refer to the transcript of the motion hearing held on December 4, 1997.

not have been discovered sooner with the exercise of due diligence, the "proffered testimony of

[Holloman] would be cumulative to the testimony of [Jones]" and would have done "nothing

more than bolster evidence already submitted to and discredited by the jury[.]" *Id.* (citations

omitted). Furthermore, the court found, the evidence was not of "'such character as to create a

probability that had such evidence been received at the trial the verdict would have been more

favorable to the defendant[.]'" *Id.* (quoting N.Y. Crim. Proc. Law § 330.30(3) (citations

omitted)). Leave to appeal was denied by the New York Court of Appeals. *People v.

McCullough*, 95 N.Y.2d 936, 744 N.E.2d 148, 721 N.Y.S.2d 612 (N.Y. 2000).

McCullough was sentenced to concurrent, determinate terms of imprisonment, the

longest of which was twenty years for the first degree burglary conviction. On direct appeal, the

Appellate Division unanimously affirmed his conviction. *See People v. McCullough*, 275 A.D.2d

1018, *supra*. The Court of Appeals denied leave to appeal. *People v. McCullough*, 95 N.Y.2d

936, *supra*. McCullough then collaterally attacked his conviction by means of a motion to vacate

the judgment pursuant to C.P.L. § 440.10(1)(h), asserting several reasons why he allegedly did

not receive the effective assistance of trial counsel. The trial court denied this application in a

written order entered January 7, 2002. *See* Respondent's Appendix of Exhibits ("Resp't App.") P

at 193-203.

## V.     Analysis of Claims Presented in the Amended Petition

### A.     Standard of Review for Habeas Petitions

McCullough's conviction post-dates the enactment of the Anti-terrorism and Effective

Death Penalty Act ("AEDPA"), which modified the federal habeas statute codified in 28 U.S.C.

§ 2254. Pursuant to AEDPA, a petitioner seeking federal review of his conviction must

demonstrate that the state court's adjudication of his federal constitutional claim resulted in a

decision that was contrary to or involved an unreasonable application of clearly established

Supreme Court precedent, or resulted in a decision that was based on an unreasonable factual

determination in light of the evidence presented in state court.  *See* 28 U.S.C. § 2254(d)(1), (2);

*Williams v. Taylor*, 529 U.S. 362, 375-76 (2000).

### B.      Merits of the Amended Petition

### 1.      Prosecutorial Misconduct

McCullough alleges that the district attorney's office engaged in the misuse of judicial

process during the investigator's execution of the material witness order on Jones. McCullough

contends that it was improper for Jones to be brought first to the prosecutor's office instead of

immediately to court. On direct appeal, the prosecution argued that McCullough's failure to

include the material witness order in the appellate record precluded review of the contention that

the order contained specific language directing that Jones be taken before the court "forthwith."

Second, the prosecution contended that given the fact that the prosecutor met with Jones in his

office *immediately* prior to the scheduled resumption of her testimony, any error in failing to

bring her before the court "forthwith" must be considered harmless, especially in light of her

subsequent testimony as a witness for the defense. *See* People's Appellate Brief at 9-10, Resp't

App. G at 134-35.  The state appellate court held that there was "no basis on [the] record for

concluding that the prosecutor or his investigator was guilty of misconduct in procuring the

testimony of the sole identification witness." *People v. McCullough*, 275 A.D.2d 1018, *supra*.

At the outset, the Court observes that neither in his state appellate brief nor in his habeas

petition did McCullough cite any federal constitutional law in support of this claim. Such an

omission generally precludes federal review of a claim since federal habeas corpus relief will not lie to rectify errors of state constitutional, statutory, or procedural law unless a federal constitutional issue is also presented. *See Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991) (stating that a federal habeas court "is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States;" it is not the province of a federal habeas court to re-examine state court determinations of state law); 28 U.S.C. § 2254(a). This Court has reviewed the entire trial transcript and, like the state appellate court, can discern no impropriety on the part of the prosecutor or his investigator.  McCullough has not demonstrated any violation of state law, let alone an error of federal constitutional magnitude. As a result, this claim must be denied.

### 2.        Ineffective assistance of trial counsel

McCullough raises several grounds of alleged ineffective assistance of counsel, all of which were raised in connection with his C.P.L. § 440.10 motion and rejected both on the merits and on a procedural basis (C.P.L. § 440.10(2)(c)) by the state trial court. However, respondent has failed to argue that a procedural default occurred by reason of the trial court's reliance, in the alternative, on a state procedural bar rule to deny the claim. Therefore, it has waived the affirmative defense. *Hooks v. Ward*, 184 F.3d 1206, 1216 (10th Cir. 1999) ("[S]tate-court procedural default . . .  is an affirmative defense, and [ ] the state is 'obligated to raise procedural default as a defense or lose the right to assert the defense thereafter.'") (quoting *Gray v. Netherland*, 518 U.S. 152, 165-66 (1996)); *accord, e.g.*, *See Larrea v. Bennett*, No. 01 CIV. 5813(SAS)(AJP), 2002 WL 1173564, at *12 n. 15  (S.D.N.Y. May 31, 2002). Consequently, this Court will consider McCullough's ineffective assistance claim on the merits.

In order to prevail on a claim of ineffective assistance of trial counsel within the

framework established by the Supreme Court in *Strickland v. Washington*, 466 U.S. 668 (1984),

a habeas petitioner must satisfy a two-part test. First, the petitioner must demonstrate that

counsel's performance was so deficient that counsel was not functioning as "counsel" within the

meaning of the Sixth Amendment to the Constitution. *Id.* at 688. In other words, the petitioner

must show that his attorney's performance "fell below an objective standard of reasonableness."

*Id.* Second, the petitioner must show that counsel's deficient performance prejudiced him. *Id.* at

694. To establish the "prejudice" prong of the *Strickland* test, the petitioner must show that a

"reasonable probability" exists that, but for counsel's error, the outcome of the trial would have

been different. *Id.* at 694.  The issue of prejudice need not be addressed, however, if a petitioner

is unable to demonstrate first that his counsel's performance was inadequate. *Id.* at 697 ("[T]here

is no reason for a court deciding an ineffective assistance claim to . . . address both components

of the inquiry if the defendant makes an insufficient showing on one.").

### a.     Alleged Grounds of Ineffectiveness

### 1.)     Failure to call alibi witnesses

McCullough argues that trial counsel was ineffective in failing to call potential alibi

witnesses Brown and Jackson, who were both passengers in McCullough's car when he was

stopped by the police after the incident. Brown, a black female, was found to be in possession of

the Smith & Wesson revolver which the indictment subsequently charged that McCullough used

in connection with the burglary at Jones's house. McCullough states that Brown voluntarily

appeared at defense counsel's office prior to trial and claimed that, in fact, this gun belonged to

her.  McCullough submitted an affidavit signed by Jackson, a black male, in which Jackson

stated that McCullough was with him at the time of the incident and therefore could not have

been the perpetrator.

Turning first to Brown, the Court notes that she was McCullough's girlfriend at the time of the incident. In her statement to the police, she related that McCullough had picked her up at about 11:40 p.m. that night and that when he did so, another black male was already in McCullough's Cadillac. She stated that upon subsequently observing the police, McCullough handed his gun to her and that she put it into her coat pocket, from which it was later retrieved by the police. Brown also stated that McCullough knew an individual by the name of "Chill," but that she did not know what his relationship or dealings with "Chill" were.

As the trial court found, it is quite apparent why defense counsel chose not to call Brown as an alibi witness; in the first place, Brown could not supply an alibi for McCullough, as by her own statement to the police, McCullough did not pick her up until 11:40 p.m., after the burglary was completed. Second, her statement to police clearly inculpated McCullough with respect to the weapons possession charge. Her later statement claiming that the gun belonged to her was certainly of questionable credibility given her relationship with McCullough.

With respect to Jackson, it is also eminently clear why defense counsel chose not to call him. Jones, the testifying victim, stated that she saw the perpetrator get into a car with another, unidentified black male and drive away; Jackson (who happened to be a black male) was found in McCullough's car only minutes after the burglary. Thus, Jackson would not have been helpful to McCullough as an alibi witness.

Because there is no reasonable probability that the outcome of McCullough's trial would have been different had these two individuals testified, he was not prejudiced by counsel's failure to call them. Indeed, defense counsel acted quite reasonably in declining to call two

witnesses whose credibility would have been subject to significant impeachment.

### 2.)    Failure to call a witness at the *Isaacson* hearing

McCullough contends that trial counsel erred in failing to call Cynthia Loria ("Loria") to testify at the hearing regarding the execution of the material witness order on Jones by the district attorney's investigator. Loria was a co-worker of Jones, and she apparently witnessed the encounter between Jones and the investigator. According to McCullough, Loria would have testified that Jones was threatened with arrest if she refused to testify at trial.

The investigator, who was the prosecution's own witness, testified about the threat of arrest which Loria witnessed, explaining that he told Jones that she could either come to court voluntarily or, if necessary, he would obtain her presence "the hard way." Thus, Loria's testimony essentially would have been cumulative to the investigator's testimony, and McCullough was not prejudiced by defense counsel's failure to call her as a witness. Moreover, "[t]he decision whether to call any witnesses on behalf of the defendant, and if so which witnesses to call, is a tactical decision of the sort engaged in by defense attorneys in almost every trial." *United States v. Neresian*, 824 F.2d 1294, 1321 (2d Cir. 1987). Because such decisions "fall squarely within the ambit of trial strategy," they will not constitute a basis for an ineffective assistance claim provided that they are "reasonably made." *Id.*; *accord United States v. Eisen*, 974 F.2d 246, 265 (2d Cir. 1992). McCullough has not demonstrated that trial counsel's decision not to call Loria was professionally unreasonable.

### 3.)    Failure to object to lack of C.P.L. § 710.30 notice regarding petitioner's statement at the show-up identification procedure

As discussed above, McCullough apparently yelled out, "You better talk to Chill!" or

words to that effect, during the show-up identification procedure. McCullough's outburst regarding Chill was not recorded in the police reports; it first came out at the pre-trial suppression hearing.

In New York, the prosecution is under an obligation to provide notice pursuant to C.P.L. § 710.30 of any voluntary statements of a defendant it intends to use at trial; here, the prosecutor did not give the requisite § 710.30 notice because he was unaware of the statement due to the police officers' failure to include it in their reports; the suppression hearing apparently was the first time that the prosecutor learned of McCullough's remark. The officers involved testified that they did not make a notation regarding the remark in their reports, and only remembered it while preparing to testify at trial, a matter which was thoroughly explored by defense counsel at the hearing and at trial on cross-examination.

C.P.L. § 710.30 provides that when the prosecution intends to offer at trial evidence of statements made by a defendant to a police officer, which, if involuntarily made would render the evidence of those statements suppressible, it must serve upon the defendant a notice of such intention before trial. N.Y. Crim. Proc. Law §§ 710.30(1), (2). Only upon a showing of "good cause" may the trial court permit the prosecution to serve the notice during trial with a "reasonable opportunity" to make a suppression motion during trial. *People v. Briggs*, 38 N.Y.2d 319, 322, 379 N.Y.S.2d 779, 342 N.E.2d 557 (N.Y. 1975). The New York Court of Appeals has held that a prosecutor's professed lack of knowledge of the statements in question does not constitute "good cause" for failure to give C.P.L. § 710.30 notice. *See People v. Spruill*, 47 N.Y.2d 869, 870-81, 419 N.Y.S.2d 69, 392 N.E.2d 1252 (N.Y. 1979) ("We have previously held that lack of continuity or other office failure within the prosecutor's office does not provide

an adequate excuse. The excuse offered in this case that the police officer had not informed the prosecutor of the confession prior to trial is no different in principle. Under similar circumstances we have noted that knowledge on the part of the police department would, of course, be imputed to the District Attorney's office. A defendant ought not be penalized because of any inadequacy of internal communication within the law enforcement establishment.") (internal quotations and citations omitted).

Thus, under prevailing state case law, trial counsel had a colorable basis on which to object to the prosecution's failure to give timely C.P.L. § 710.30 notice. The Court agrees with McCullough that counsel's failure to do so was erroneous. However, counsel's error did not prejudice McCullough's right to a fair trial since the statement would have been held admissible in any event. This is because the lack of "good cause" for the failure to give notice likely would not have translated into the suppression of the statement. C.P.L. § 710.30 also provides that "[i]n the absence of service of notice upon a defendant as prescribed in this section, no evidence of a kind specified in subdivision one may be received against him upon trial unless he has, despite the lack of such notice, moved to suppress such evidence and such motion has been denied and the evidence thereby rendered admissible[.]" N.Y. Crim. Proc. Law § 710.30(3). As discussed below, even if trial counsel had objected and requested a suppression hearing specifically to explore the admissibility of the statement, the end result, in all likelihood, would have been that the statement was held admissible.

"The purpose of C.P.L. § 710.30 is to provide defendant with an opportunity to challenge the admissibility of inculpatory statements made to law enforcement personnel which the People intend to offer at trial[.]" *People v. Martinez*, 9 A.D.3d 679, 779 N.Y.S.2d 821 (App. Div. 3d

Dept. 2004). Here, McCullough "was given a full opportunity to challenge the admissibility of the statements at his pretrial suppression hearing." *People v. Laporte*, 184 A.D.2d 803, 584 N.Y.S.2d 662 (App. Div. 3d Dept. 1992) (holding that defendant could not obtain reversal based on untimely C.P.L. § 710.30 notice because he was given a full opportunity to challenge the admissibility of the statements at his pretrial suppression hearing and therefore could not argue that he was given insufficient notice) (citations omitted). The police officers testified at the suppression hearing that as McCullough was brought up onto the victim's front porch for the show-up, he started shouting to Jones that she had "better talk to Chill." The pre-trial hearing testimony showed that these statements were completely spontaneous and unsolicited by the police, and did not result from express questioning by the police or its functional equivalent.  In fact, the testimony was that one of the officers tried to cover up McCullough's mouth to keep him from yelling.  Because the remark was a spontaneous statement, it was admissible even in the absence of *Miranda* warnings. *See Rhode Island v. Innis*, 446 U.S. 291, 300-301 (1980); *People v. Smith*, 21 A.D.3d 587, 800 N.Y.S.2d 636 (App. Div. 3d Dept. 2005) ("[S]pontaneous statements made while in custody which are not the product of questioning or its functional equivalent clearly are admissible regardless of whether *Miranda* warnings were given[.]").

Although counsel erred in failing to raise the C.P.L. § 710.30 issue prior to or during trial, this omission on counsel's part did not result in constitutional prejudice to McCullough. For this reason, this ineffective assistance claim cannot provide a basis for habeas relief.

### 4.)       Failure to agree to the *Hellenbrandt* [*sic*] hearing suggested by the trial court

McCullough contends that defense counsel erred in declining to have the trial court conduct a so-called "*Hellenbrandt*" hearing regarding Jones's initial allegations that her family

had received threats of harm, and that is why she and her daughter failed to appear to testify. The parties all refer to this as a "*Hellenbrandt*" hearing, although they apparently are referring to a *Sirois* hearing, which is the procedure recommended by the state court in *Matter of Holtzman v. Hellenbrand*, 92 A.D.2d 405, 460 N.Y.S.2d 591 (App. Div. 2d Dept. 1983). *Hellenbrand* was a proceeding pursuant to Civil Practice Law and Rules Article 78 in the nature of mandamus, requiring the respondent New York state supreme court justice to hold a hearing in the case of *People v. Sirois* to determine whether the defendant in that underlying case, Neil Sirois, by his misconduct induced a prosecution witness, Adele Sirois, to unlawfully refuse to testify at defendant's trial. The court in *Hellenbrand* held that whenever the prosecution alleges specific facts which demonstrate a "distinct possibility" that a criminal defendant's misconduct has induced a witness's unlawful refusal to testify at trial or has caused the witness's disappearance or demise, the prosecution shall be given the opportunity to prove that misconduct at an evidentiary hearing. *Id.* At the hearing, the prosecution bears the burden of proving defendant's misconduct by clear and convincing evidence. *Id.*

Under the circumstances, it is not difficult to understand why trial counsel did not want to participate in a *Sirois*/*Hellenbrand* hearing. Rather, he stated on the record that his client was not in any way responsible for the threats and opposed a missing witness charge regarding Holloman. It is unclear to this Court what McCullough would have gained by a *Sirois*/*Hellenbrand* hearing. Ultimately, Jones ended up testifying as a *defense* witness, and denied that the reason that she failed to appear at trial initially was because she was afraid of McCullough. Under these circumstances, the Court finds no basis for second-guessing trial counsel's strategic decision to avoid an on-the-record exploration of potential threats by his

client, let alone for finding that McCullough was prejudiced as a result of the failure to participate in a *Hellenbrand* hearing.

### 3.    Ineffective assistance of appellate counsel

McCullough claims that appellate counsel was ineffective in failing to argue on direct appeal all of the foregoing instances of alleged ineffectiveness by trial counsel. Respondent alleges that this claim was not exhausted in state court, and argues that it is procedurally defaulted because McCullough has already used the one direct appeal to which he is entitled. This is incorrect. Claims of ineffective assistance of appellate counsel are properly raised in a collateral application for a writ of error *coram nobis*, not on direct appeal; to require otherwise would place appellate counsel in the untenable position of arguing that she herself was ineffective. Furthermore, there is no time limit for bringing a motion for a writ of error *coram nobis*. Thus, there would be no state procedural bar preventing McCullough from returning to state court to raise this claim.

In opposition to respondent's argument, McCullough asserts that, in fact, he has exhausted his ineffective assistance of appellate counsel claims by means of a *coram nobis* application. *See* Petitioner's Traverse at 12 (Docket #10); Petitioner's Appendix J (writ of error *coram nobis* motion papers, submitted in support of the instant petition). The Appellate Division summarily denied this application, and leave to appeal was denied. *See People v. McCullough*, 299 A.D.2d 973, 749 N.Y.S.2d 454 (App. Div. 4th Dept. 2002), *lv. denied*, N.Y.2d 583, 785 N.E.2d 741, 755 N.Y.S.2d 719 (N.Y. 2003). Thus, the claim appears to be fully exhausted and properly before this Court.

Although the *Strickland* test was formulated in the context of evaluating the effectiveness

of trial counsel, the same standard applies to claims regarding the performance of appellate

counsel. *Mayo v. Henderson*, 13 F.3d 528, 533 (2d Cir. 1994) (citations omitted). McCullough

thus must show both that appellate counsel omitted material and obvious issues while pursuing

arguments that were patently and significantly weaker, *and* that there is a "reasonable

probability" that the outcome of his appeal would have been favorable, had the omitted claims

been raised. *See id.*

     As discussed above, apart from trial counsel's failure to object to the lack of C.P.L. §

710.30 notice, the errors allegedly committed by counsel were not really errors at all. Thus, the

only nonfrivolous appellate issue regarding trial counsel's performance was the failure to object

to the lack of C.P.L. § 710.30 notice. However, the trial court, in denying McCullough's C.P.L. §

440.10 motion, specifically rejected the notion that counsel's error regarding the C.P.L. § 710.30

notice amounted to ineffective assistance. *See* County Court Order Denying C.P.L. § 440.10

Motion ("Under these circumstances, it is clear that defendant was not prejudiced by the lack of

§ 710.30 notice in this case. . . . [C]ounsel's error was not such as to deprive defendant of his

right to effective assistance of counsel."), Resp't App. P (Docket #7). As the trial court's holding

makes clear, this error was not a sufficient shortcoming on which to premise a claim of

ineffective assistance of counsel under New York State law. Since the argument that

McCullough identifies as omitted on appeal is without merit, he is unable to prove prejudice.

Omission of insignificant claims that likely will be unsuccessful on appeal does not prejudice a

defendant. *See Mayo v. Henderson*, 13 F.3d at 534 ("To establish prejudice in the appellate

context, a petitioner must demonstrate that 'there was a "reasonable probability" that [his] claim

would have been successful . . . .'") (alteration in original) (quoting *Claudio v. Scully*, 982 F.2d

798, 803 (2d Cir. 1992)). As a result, McCullough's ineffective assistance of appellate counsel claim does not provide a basis for habeas relief.

**VI.      Conclusion**

For the reasons stated above, Robert McCullough's petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 is denied, and the petition is dismissed. Because McCullough has failed to make a substantial showing of a denial of a constitutional right, I decline to issue a certificate of appealability. *See* 28 U.S.C. § 2253.

**IT IS SO ORDERED.**

/s/ *Victor E. Bianchini*

_____

VICTOR E. BIANCHINI
United States Magistrate Judge

DATED:        July 14, 2006
              Buffalo, New York.

-23-